IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

|  |  |  |
|---|---|---|
| RUBEN ESTEVEZ, | ) | |
| *Plaintiff*, | ) | |
| -vs- | ) | Case No. _____ |
| | ) | JURY DEMAND |
| ARNIE BARATTI, in his individual capacity; ROGER TINWELL, in his individual capacity; | ) | |
| *Defendants*. | ) | |

C O M P L A I N T

COMES NOW THE PLAINTIFF, RUBEN ESTEVEZ, and sues the Defendants, ARNIE BARATTI, ROGER TINWELL, each in their individual capacities, and would state as follows:

**I.**
**Introduction**

1. Ruben Estevez is a former Correctional Tactical Officer with the Tennessee Department of Correction ("TDOC"). He brings this action pursuant to 42 U.S.C. § 1983 against Defendants Arnie Baratti and Roger Tinwell, who are also employed in Special Operations for TDOC, for conducting an unlawful warrantless search of his home and wrongfully seizing his personal property in violation of the Fourth Amendment to the United States Constitution. Plaintiff seeks compensatory and punitive damages for Defendants' violations of his constitutional and statutory rights.

**II.**
**Jurisdiction and Venue**

2. This court is vested with jurisdiction pursuant to 28 U.S.C. §1331 based on federal questions arising under 42 U.S.C. §1983 and the Fourth Amendment to the United States Constitution. In addition, venue is proper because the parties are domiciled in this federal district, and all of the events giving rise to this case occurred within the Middle District of Tennessee.

**III.**
**Parties**

3. The Plaintiff Ruben Estevez is an adult citizen and resident of Davidson County, Tennessee.

4. Defendant Arnie Baratti was, at all times relevant hereto, employed by the Tennessee Department of Correction as Chief of the Contraband Interdiction Unit. He is a state actor and is sued in his individual capacity for actions taken under color of state law. Defendant Baratti directed and participated in the warrantless, non-consensual search of Mr. Estevez's private residence and the seizure of his personal property without lawful authority. The right to be free from a warrantless search of one's home is clearly established constitutional law of which any reasonable officer would have known. Defendant Baratti acted with careless, reckless or deliberate indifference to the Plaintiff's clearly established constitutionally protected rights and is not entitled to qualified immunity.

5. Defendant Roger Tinwell was, at all times relevant hereto, employed by the Tennessee Department of Correction as Special Agent in Charge of Middle Tennessee Operations. He is a state actor and is sued in his individual capacity for actions taken under color of state law. Defendant Tinwell conducted the warrantless, non-consensual search of

2

Mr. Estevez's private residence at the direction of Defendant Baratti and participated in the unlawful seizure of Mr. Estevez's personal property without warrant, consent, or lawful authority. The right to be free from a warrantless search of one's home is clearly established constitutional law of which any reasonable officer would have known. Defendant Tinwell acted with careless, reckless or deliberate indifference to the Plaintiff's clearly established constitutionally protected rights and is not entitled to qualified immunity.

## IV.
## Facts

6. Mr. Estevez proudly served in the United States Army from September 2015 to May 2021, receiving an honorable discharge upon completion of service. During his tenure, he completed two combat deployments to Afghanistan in support of Operation Enduring Freedom and Operation Freedom Sentinel. Mr. Estevez's final assignment was as an Infantry Squad Leader, where he was responsible for leading, training, and ensuring the welfare and operational readiness of his soldiers in both garrison and combat environments.

7. In recognition of service-connected conditions arising from Mr. Estevez's deployments, the U.S. Department of Veterans Affairs (VA) has determined that he is 100 percent disabled.

8. Mr. Estevez was employed by TDOC since July 12, 2021, and served as an Executive Service employee beginning in February 2022.

9. On April 20, 2025, Ruben Estevez was apprehended on two stalking warrants issued by the mother of his son, who is employed by the Metropolitan Nashville Police Department ("MNPD").

10. The mother of Mr. Estevez's son falsely reported to Metro authorities that Mr. Estevez was suicidal and homicidal, and further alleged he had threatened to engage in a shootout with police if ever arrested.

11. These statements were entirely false.

12. Based on these allegations, law enforcement monitored Mr. Estevez's phone's geolocation under a purported mental-health concern.

13. Prior to his arrest, Mr. Estevez received a call from his supervisor at TDOC notifying him that Metro officers wished to speak with him and that a "Be On the Lookout" (BOLO) alert had been issued for him.

14. TDOC Special Operations Director, James Bobela, instructed Mr. Estevez to return the state-issued vehicle he had been operating. Mr. Estevez agreed to fully cooperate in the return of this vehicle.

15. Mr. Estevez exited his home to retrieve his personal belongings from the vehicle when he observed a marked police car parked across the street.

16. Moments later, the police vehicle entered his driveway with lights and sirens activated. The officer exited his vehicle, but Mr. Estevez closed his garage door before he could speak.

17. Within minutes, multiple MNPD vehicles arrived, blocking off the street. Officers began making announcements over a loudspeaker, though Mr. Estevez could not clearly hear them because he was on the phone with family members.

18. During this time, Mr. Estevez received calls from the negotiator, Officer Marcus Miracle, to whom the Plaintiff repeatedly affirmed his intention to surrender

peacefully. Mr. Estevez desired to avoid injury, and he affirmed his lack of intent to harm anyone.

19. At some point thereafter, a MNPD SWAT team arrived at the scene and forcibly entered Mr. Estevez's residence.

20. SWAT detonated explosives to breach Mr. Estevez's home, resulting in the destruction of doors, windows, and substantial structural damage throughout the residence. Mr. Estevez was bitten by a police canine during entry and transported to a hospital for treatment.

21. Mr. Estevez did not commit any act that justified arrest or the level of force used against him. He never made threats to any law enforcement officers, nor did he ever claim he was going to harm myself. Throughout the encounter, he repeatedly reassured officers that he intended to come out peacefully.

22. While being taken into custody, Mr. Estevez observed several TDOC agents at the scene, including the Defendant Arnie Baratti (Chief of the Contraband Interdiction Unit), Defendant Roger Tinwell (Special Agent in Charge of Middle Tennessee Operations), and Tyler Briggs (Team Leader in Mr. Estevez's assigned unit).

23. When he arrived at the Metro jail, Mr. Estevez was served a restraining order to any avoid contact with his son and his mother.

24. Mr. Estevez's bail was set at $80,000, which Plaintiff represents is an unusually high amount for the alleged misdemeanor offense.

25. Because the amount exceeded $75,000, under Tennessee law requires a judicial review of the source of the bond funds prior to release. This procedure caused a

5

three-day delay before Mr. Estevez could appear before a judge and secure his release, despite having no prior history of violence or threats.

26. Upon release on April 23, 2025, Mr. Estevez was informed by his attorney, Lody Powers, that as a condition of his bond, he was required to dispose of all firearms in his possession within forty-eight (48) hours. Mr. Estevez signed paperwork acknowledging this bond condition, and was instructed to record a video showing no firearms remained in his home to prove compliance.

27. When Mr. Estevez returned home, his sister Kastiana Estevez informed him that his roommate, Special Agent Katie Cimmino, had been forced to vacate the residence by TDOC personnel.

28. Upon further inspection, Mr. Estevez discovered that all of his firearms were missing.

29. Mr. Estevez immediately contacted Agent Cimmino, who told him that Defendant Arnie Baratti had entered his personal residence and taken possession of his weapons.

30. When he asked why, Agent Cimmino stated that Defendant Baratti claimed Mr. Estevez was prohibited from possessing firearms due to a "domestic violence" arrest. Mr. Estevez responded that no such restriction applied absent a qualifying court order.

31. According to Ms. Cimmino, Defendant Chief Baratti instructed Agent Roger Tinwell to conduct a thorough search of Mr. Estevez's home. During this unauthorized and illegal search, both men commented about personal items they observed during the unlawful entry.

32. Ms. Cimmino never consented to the search.

33. Defendants wrongfully seized equipment that had been issued to Mr. Estevez by TDOC. They also went into Mr. Estevez's wallet and took his commission ID card and badge.

34. Later that evening, around 9:15 p.m., Mr. Estevez texted Chief Baratti requesting the serial numbers of his firearms for bond-compliance documentation. Chief Baratti declined stating that the weapons were in TDOC custody and not with MNPD.

35. The Bond Order expressly directed Mr. Estevez to transfer his firearms to a person legally authorized to possess them within forty-eight hours. The Order did not authorize any transfer of the firearms to TDOC or any other agency.

36. MNPD did not seize Mr. Estevez's firearms during their lawful execution of the arrest warrants.

37. While Mr. Estevez was incarcerated awaiting his bond release, Ms. Cimmino informed him that Tyler Briggs and another TDOC agent whose first name is Ryan entered Mr. Estevez's residence and boarded up the doors and windows. She also stated that both Ryan and Mr. Briggs witnessed the unlawful search of his home.

38. During the unauthorized search, TDOC agent Ryan was heard to remark: *"If I were Ruben, I would sue TDOC for taking his weapons."*

39. On April 24, 2025, TDOC terminated Mr. Estevez's employment, alleging the following: "On or around April 20, 2025, while off duty, you employed a state vehicle and a state-issued cellular phone to purportedly participate in domestic-violence activities (stalking) involving your partner and the mother of your child. Additionally, when officers from the Metropolitan Nashville Police Department endeavored to apprehend you, you resisted arrest and fortified yourself within the premises, issued verbal threats to MNPD

officers, and expressed intentions of self-harm during discussions with MNPD hostage negotiators, necessitating SWAT intervention."

40. MNPD's official incident report contradicts this statement. The report states, officers responded for a health-and-welfare check, and because of two existing warrants they arrested Mr. Estevez, after which he was transported without incident.

41. Mr. Estevez did not threaten or engage in any criminal conduct, nor did he use any state-issued equipment in connection with the allegations.

42. Even though the criminal charges against Mr. Estevez were later dismissed, he was unable to appeal his termination because of his classification as executive staff, a position for which there is no right to an administrative appeal.

43. TDOC terminated Mr. Estevez's employment without investigation, without any opportunity to respond, and without confirming the circumstances of the incident. Instead, they relied solely on unverified third-party statements. The termination letter falsely accused Mr. Estevez of making violent threats and misusing state property — accusations that were never substantiated and later discredited when all charges were dismissed.

44. When Mr. Estevez contacted the TDOC Department of Human Resources, they informed him that they could not assist him and that he would need to pursue legal action to resolve the matter.

45. On June 30, 2025, during a court hearing, Mr. Estevez's son's mother testified under oath that she had been suffering from a postpartum episode and that her previous accusations against Mr. Estevez were fabricated.

46. All charges against Mr. Estevez were dismissed in full.

47. Despite the dismissal, TDOC continues to unlawfully hold possession of Mr. Estevez's firearms without a court order or lawful authority.

48. On or about April 26, 2024, Mr. Estevez spoke with Tyler Briggs (Team Leader from SOU) regarding TDOC's unauthorized search of his home. Mr. Briggs stated that he "wasn't involved with going through (Mr. Estevez's) belongings" and that the agents were the ones who searched through everything inside of Mr. Estevez's home. He explained that he only looked in Mr. Estevez's closet for the magazine that belonged with his state-issued weapon.

49. On June 30, 2025, Mr. Estevez contacted Defendant Chief Arnie Baratti and Defendant Director James Bobela requesting the return of his property. Chief Baratti refused, claiming he would not release the firearms if the case was "ongoing." Mr. Estevez explained that transfer to a third party would not violate bond conditions and questioned why TDOC had searched his home when MNPD had not. He responded that he referred the matter to TDOC Legal Counsel.

50. On July 10, 2025, Mr. Estevez called the TDOC Legal Department and was told by legal counsel Mosley that returning his firearms "shouldn't be an issue" because TDOC could verify case dismissals. However, follow-up calls went unanswered. Later, Defendant Baratti texted Mr. Estevez contact information for Senior Associate Counsel Laney Heard, stating he would need a court order to retrieve his property.

51. Mr. Estevez spoke directly with attorney Heard, who repeated that only a court order from the judge would suffice. When he asked why such an order was necessary given the seizure's illegality, she refused to answer and said only, "I already told you what you need to do, Mr. Estevez."

9

52. As a result of these events, Mr. Estevez has suffered significant emotional and psychological distress. The unlawful seizure of his firearms, the unauthorized search of his home, and his abrupt termination without due process left him feeling betrayed and humiliated by the agency he served for nearly five years.

53. These actions have damaged Mr. Estevez's reputation, career, and mental health. Since the incident, he has experienced depression, anxiety, insomnia, and loss of motivation.

54. Mr. Estevez is under the care of a licensed mental-health professional for continuing treatment related to post-traumatic stress, anxiety, and depression arising directly from TDOC's misconduct.

55. Financially, the actions of TDOC members have also caused significant hardship. The loss of Mr. Estevez's firearms, the costs of ongoing medical and psychological care, and the impact on his ability to work and rebuild his life have placed him under serious financial strain.

## V.
## Causes of Action

### COUNT I
Violation of the Fourth Amendment – Unlawful Search and Seizure
(42 U.S.C. §1983 – Against Defendants Baratti and Tinwell, Individually)

56. Plaintiff incorporates the allegations in the previous paragraphs, and does further allege as follows.

57. At all times relevant hereto, Defendants Baratti and Tinwell were acting under color of state law within the meaning of 42 U.S.C. §1983, as employees and agents of the Tennessee Department of Correction acting in their official duties.

10

58. The Fourth Amendment to the United States Constitution guarantees individuals the right to be free from unreasonable searches of their homes and unreasonable seizures of their property. A warrantless search of a home is presumptively unreasonable absent a recognized exception. It is clearly established law that law enforcement officers may not conduct a warrantless, non-consensual search of a private residence without a warrant, exigent circumstances, or consent.

59. Defendant Baratti directed, and Defendant Tinwell conducted, a warrantless search of Mr. Estevez's private residence. Neither MNPD, which had lawful authority to arrest Mr. Estevez under outstanding warrants, conducted or requested any search of his home. Defendants Baratti and Tinwell had no search warrant, no court order, no consent from any authorized occupant, and no exigent circumstances justifying a warrantless search. Their entry into and search of Mr. Estevez's home was therefore unlawful under the Fourth Amendment.

60. The right to be free from a warrantless, non-consensual search of one's home is a clearly established constitutional right of which any reasonable officer would have known. The Supreme Court has long held that searches and seizures inside a home without a warrant are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586 (1980). The Sixth Circuit has consistently recognized that the Fourth Amendment's prohibition on warrantless home searches is among the most clearly established rights in constitutional law. *Andrews v. Hickman Cnty., Tenn.*, 700 F.3d 845, 854 (6th Cir. 2012). No reasonable officer in Defendants' positions could have believed that entering and searching a private residence — without a warrant, without consent, without exigent circumstances, and

11

without any lawful basis — was constitutionally permissible. Defendants Baratti and Tinwell are therefore not entitled to qualified immunity.

61. During the unlawful search, Defendants Baratti and Tinwell seized Mr. Estevez's personal firearms, other personal property, and items from his wallet including his commission identification card and badge. These items were seized without a warrant, without a court order, and without lawful authority. Mr. Estevez did not consent to the seizure of his property. Despite the dismissal of all criminal charges against him, Defendants have refused to return Mr. Estevez's property and continue to hold it unlawfully, compounding the constitutional violation.

62. As a direct and proximate result of Defendants Baratti's and Tinwell's violations of Mr. Estevez's Fourth Amendment rights, he has suffered damages including the deprivation and loss of personal property, emotional distress, humiliation, and financial harm, for which he is entitled to compensatory and punitive damages under 42 U.S.C. §1983.

63. Plaintiff further alleges that punitive damages are available in civil rights litigation under 42 U.S.C. §198 3 where the actions of the defendant exhibit "evil motive or intent, or reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). The standard has also been described as "malice" where actions are the result of ill will or an intent to injure. It is not relevant whether the Plaintiff is found to have suffered compensatory injuries in a civil rights case for the jury to award punitive damages against the individual state actors.

64. The detailed facts presented in this Complaint establish that Defendants Baratti and Tinwell intentionally entered and searched Mr. Estevez's home and seized his property

without a warrant, without consent, and without any colorable legal authority, and then refused to return his property even after all criminal charges were dismissed. Defendant commissioner terminated Mr. Estevez's employment without investigation, based solely on fabricated allegations, and caused the imposition of a no-rehire designation that persists to this day despite the recantation of those allegations under oath. Each Defendant knew or should have known that their conduct violated clearly established constitutional and statutory rights. The conduct of each Defendant was intentional, reckless, and in callous disregard of Mr. Estevez's federally protected rights. Punitive damages are appropriate.

## COUNT II
### Pendent State Claim for Trespass

65. Plaintiff incorporates the allegations in the previous paragraphs, and does further allege as follows.

66. The Defendants Arnie Baratti and Roger Tinwell's unauthorized intrusion and search of the Plaintiff's private residence constitutes the intentional tort of trespass.

67. As a direct and proximate result of the Defendants' trespass on to the Plaintiff's property, he has suffered injury for which he is entitled to an award of compensatory and punitive damages.

PREMISES CONSIDERED, PLAINTIFF REQUESTS THE FOLLOWING RELIEF:

*Nominal Damages*

1. Plaintiff seeks an order awarding nominal damages for the Defendants' violation of his constitutional and statutory rights under 42 U.S.C. §1983 and the Fourth Amendment to the United States Constitution.

13

*Compensatory Damages*

2.  Plaintiff seeks an order awarding compensatory damages against the Defendants for violation of the Plaintiff's rights under 42 U.S.C. §1983, the Fourth Amendment to the United States Constitution, and for trespass, in an amount to be determined at trial.

*Punitive Damages*

3.  Plaintiff seeks an order awarding punitive damages against the Defendants for violation of the Plaintiff's rights under 42 U.S.C. §1983, the Fourth Amendment to the United States Constitution, and for trespass, in an amount to be determined at trial.

*Attorney's Fees and Costs*

4.  Plaintiff seeks an order awarding the costs of this cause, including reasonable attorney's fees, costs and expenses under 42 U.S.C. §1988.

*Jury Demand*

5.  Plaintiff demands a jury of six to hear and try this case.

*Other Relief*

6.  Plaintiff seeks an order requiring the immediate return of all personal property unlawfully seized from his residence, including his personal firearms and all other items taken without lawful authority.

7.  Plaintiff additionally requests such other relief as the Court deems just and proper.

Respectfully submitted,

CRAIN LAW GROUP, PLLC

By:
  */s/ Larry L. Crain*
Larry L. Crain, Tenn.Sup. Crt. # 9040
CRAIN LAW GROUP, PLLC
5214 Maryland Way, Suite 402
Brentwood, TN  37027
(615) 376-2600
Larry@Crainlaw.legal

*Attorney for the Plaintiff*